02D03-2108-CT-000439

USDC IN/ND case 1:21-cv-00354-HAB-SLC   document 6   filed 08/18/21   page 1 of 17

Allen Superior Court 8

Filed: 8/18/2021 4:02 PM
Clerk
Allen County, Indiana
BB

| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT |
| --- | --- | --- |
| | ) SS: | |
| COUNTY OF ALLEN | ) | CAUSE NO._____ |

| TAESHA LITTLE, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| P.A.M. TRANSPORT, INC., | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff alleges against Defendant that:

1. The Plaintiff is Taesha Little who alleges that she was sexually harassed and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Jurisdictionally, the case proceeded as follows:

    a. Plaintiff Taesha Little filed a Charge of Discrimination with the Metropolitan Human Relations Commission ("Metro"), a copy of which is attached hereto, made a part hereof, and incorporated herein as Exhibit 'A".

    b. Metro issued a determination dated January 26, 2021 finding that probable cause existed to believe that Defendant violated Plaintiff's Title VII rights (attached hereto as Exhibit "B").

    c. On May 18, 2021, Metro issued "The Determination Hearing" papers (Exhibit "C") closing their investigation at Plaintiff's request.

    d. On June 24, 2021, the EEOC issued a Dismissal and Notice of Rights, and this Complaint has been filed within ninety (90) days after receipt thereof (Exhibit "D").

2. The Defendant is P.A.M. Transport, Inc., a company authorized to do business in the State of Indiana, and does so at 4204 W. Ferguson Road, Fort Wayne, IN 46809.

–1–

Defendant's corporate headquarters is located at P.O. Box 188, Tontitown, AR 72770.

3. Plaintiff was sexually harassed when a male coworker obtained her phone number and asked her out on a date which she declined. This male coworker made unwanted advances, pursued a romantic and sexual relationship with Plaintiff, and stated sexual things about Plaintiff's butt "jiggling in her pants". That male coworker gave non-consensual hugs to the Plaintiff to which she objected, and she tried to avoid him. The male coworker threatened to "fall in and get all lost in the sauce." Plaintiff directly opposed his sexual comments, and repeatedly told the harasser to stop.

4. Plaintiff took the matter to Defendant's Human Resources Department. Shortly after reporting the sexual harassment, Plaintiff was terminated for the pretextual reason of "lack of work". Seventeen (17) similarly-situated employees were not terminated when the General Motors plant shut down. Plaintiff alleges that she was singled out and retaliated against for reporting sexual harassment.

5. Complainant reported the sexual harassment on March 18, 2020 and was terminated on March 20, 2020. Out of the 120 employees affected by the General Motors plant shut down, 112 were laid-off, and only 8 were terminated. Two of the terminated employees participated in a protected activity when Plaintiff reported the sexual harassment internally.

6. Defendant's claim that Plaintiff was "randomly selected" was false and pretextual. Seventeen (17) other employees outside of Plaintiff's protected class were not terminated when General Motors shut down. These seventeen (17) other employees are drivers with similar seniority as the Plaintiff. The comparative evidence, along

with suspiciously close timing of Plaintiff reporting the sexual harassment show that Defendant's proffered reason for her termination is a pretext for discrimination and retaliation.

7. As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff suffered damages and injuries, including lost income, emotional distress and mental anguish for which she seeks compensatory damages.

8. Defendant's actions were intentional and in reckless disregard of Plaintiff's federally protected rights under Title VII warranting an imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for compensatory damages, punitive damages, reasonable attorney's fees and costs, and for all other just and proper relief in the premises.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CHRISTOPHER C. MYERS & ASSOCIATES**

/s/Christopher C. Myers
Christopher C. Myers, #10043-02
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802
Telephone:   (260) 424-0600
Facsimile:   (260) 424-0712
E-mail:      cmyers@myers-law.com
Counsel for Plaintiff

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | EO-0121-A20<br>24D-2020-00176 |

City of Fort Wayne Metro Human Relations Commission and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Taesha Little | (217) 848-3147 | |

Street Address: 1515 Sonora Dr., Fort Wayne, IN 46825

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PAM TRANSPORT | Unknown | |

Street Address: 4204 W. Ferguson Rd., Fort Wayne, IN 46809

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 03-18-2020    Latest: 03-20-2020
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

**I am a qualified individual who has worked for Pam Trucking since May 2019, until I was terminated on March 20, 2020. On March 18, 2020, I reported to corporate that I had been sexually harassed. Further, On March 20, 2020, I informed them I may be filing a complaint with Metro Human Relations Commission and I was terminated just a few hours later. I was informed I had done nothing wrong, and that I was terminated because of the pandemic. I know of other people with less seniority that have not been terminated.**

**Based on the above, I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and Fort Wayne Ordinance G-21-78, as amended.**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date _____ Charging Party Signature _____

NOTARY -- *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

Ex. A

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

| | |
|---|---|
| STATE OF INDIANA )<br>)<br>COUNTY OF ALLEN ) | MHRC NO.  EO-0121-A20<br><br>EEOC NO.  24D-2020-00176 |
| **Taesha Little**<br>1515 Sonora Dr.<br>Fort Wayne, Indiana 46825<br>*Complainant,*<br><br>v.<br><br>**PAM Transport**<br>4204 W. Ferguson Rd.<br>Fort Wayne, Indiana 46809<br>*Respondent.* | **Christopher C. Myers**<br>Christopher C. Myers & Associates<br>809 Calhoun Street, Suite 400<br>Fort Wayne, Indiana 46802<br><br><br>**Carl Cartwright**<br>PAM Transport, Inc.<br>PO Box 188<br>Tontitown, AR 72770 |

## THE DETERMINATION HEARING

**COMES NOW,** the undersigned members of the **Determination Panel** and pursuant to Commission Rule **1-4.4** do make the following determination:

### I. JURISDICTION

On April 6, 2020 the Complainant, Taesha Little ("Complainant"), filed a complaint against PAM Transport ("Respondent"), alleging that Respondent discriminated against Complainant in employment on the basis of retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and also in violation of City of Fort Wayne General Ordinance G-21-78 ("Ordinance"), as amended.

    A.    **Timeliness**

For a complaint to be "timely," Complainant must file with the Commission within 180 days of the last date of harm. Since the last harm occurred on March 20, 2020 and the charge was filed on April 6, 2020 well within 180 days of the last date of harm, the timeliness jurisdictional requirement is therefore met.

    B.    **Personal Jurisdiction**

Respondent's place of business is located at 4204 W. Ferguson Rd., within the territorial boundaries of the City of Fort Wayne, State of Indiana. The Ordinance requires that the Commission exercise jurisdiction against employers with at least six (6) employees. To be under the jurisdiction of Title VII, an employer must have fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the

Ex B

## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

current or preceding calendar year. In other words, an employer must have fifteen (15) or more employees each day for a twenty week period during the year the discrimination occurred or the year prior to the discrimination. Because the Respondent had fifteen (15) or more employees for twenty weeks in the two-year period between March 20, 2018, and March 20, 2020, personal jurisdiction has been met.

### C.     Subject Matter Jurisdiction

As indicated above, Complainant is alleging that the Respondent discriminated against them on the basis of retaliation in violation of Title VII and the Ordinance. The Commission has authority to enforce these laws. Subject matter jurisdiction is therefore met.

## II.     THE CHARGE, SUMMARY OF RESPONSE AND REBUTTAL

The Commission's complaint process commences with the filing and acceptance of a charge. The charge is forwarded to the Respondent for an answer or response to the charge, including an invitation for both parties to enter into voluntary mediation. Following receipt of the response, the Commission, if it deems necessary, makes pertinent provisions available to the Complainant for a rebuttal. If a Complainant fails to rebut, the Commission will make a determination on the record available to it, including any independent evidence acquired. Following a rebuttal, or lack of, the Commission utilizes any series of investigative tools to bring the investigation to as prompt a completion as resources dictate.

### A.     Complainant's Charge

On April 6, 2020, Complainant alleged and signed the following statement:

> I am a qualified individual who has worked for Pam trucking since May 2019, until I was terminated on March 20, 2020. On March 18, 2020, I reported to corporate that I had been sexually harassed. Further, on March 20, 2020, I informed them I may be filing a complaint with Metro Human Relations Commission and I was terminated just a few hours later. I was informed I had done nothing wrong, and that I was terminated because of the pandemic. I know of other people with less seniority that have not been terminated.
>
> For these reasons, I feel I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and Fort Wayne Ordinance G-21-78, as amended.

### B.     Respondent's Response to Complainant's Charge

Respondent denied the allegations and in summary stated the following: Complainant began working for Respondent on May 21, 2019 as a Professional Over the Road Driver based out of the Fort Wayne location. Complainant was a driver for Respondent's General Motors "Bolt" dedicated division. On March 20, 2020, Respondent was notified that its General Motors business would temporarily cease operations as a result of the

## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

COVID-19, resulting in a complete halt of business for an indeterminate length of time. As a result, Complainant, along with six (6) other General Motors "Bolt" drivers were terminated. Complainant did report sexual harassment on March 18, 2020, and this was thoroughly investigated. As a result of the investigation, a plan of action came forth resulting in both parties being counseled and signing a no contact agreement. Therefore, Complainant, and six (6) others, were terminated due to lack of work, not because she reported the sexual harassment.

### C. Complainant's Rebuttal

Complainant submitted a rebuttal on June 2, 2020 and stated in summary the following: Everything was fine with Complainant's employment until she informed Holly in HR, she was not comfortable with the way things went after she reported the sexual harassment. Complainant also informed HR that she was going to go to Metro to file sexual harassment. HR informed Complainant that going to Metro or talking to a lawyer would not go against her no contact agreement. A couple hours later the terminal manager, Eric, called Complainant and informed her she was terminated for the same reason he gave Metro. Complainant asked Eric how she was being let go when there are drivers under her with no route or work. Complainant asked if her route was cancelled, and she was informed that it still ran. Eric could not give Complainant an answer but told Complainant she was being permanently terminated. Complainant had no write-ups or accidents and was never at any risk of losing her job. Complainant was one of the first in orientation and had one of the best routes and was high up in seniority, with at least one-hundred and thirty (130) drivers under her. The person Complainant filed sexual harassment on had less seniority, and Complainant highly doubts he was terminated.

### III. SUMMARY OF INVESTIGATIVE PROCESS AND EVIDENCE

The Commission, in all, interviewed relevant witnesses and reviewed documents. Below is a summary of the evidence obtained during the investigation:

### A. Respondent's Policies

1. **Anti-Discrimination Policy (January 6, 2016)**
   The policy was provided by the Respondent and states in summary the following: All drivers have a right to work in an environment free of discrimination, which includes freedom from harassment based on age, disability, gender, genetic information, , marital status, national origin, pregnancy, race, sexual orientation, veteran status or any other legally protected status. Such conduct may result in disciplinary action up to an including termination. Other harassing conduct in the workplace includes; whether physical or verbal, including but not limited to, slurs, jokes or degrading comments; repeated offensive sexual flirtation, advances, or propositions; continual or repeated abuse of a sexual nature, graphics, verbal comments about an individual's appearance, display in the workplace of sexually suggestive objects or pictures. Drivers who have concerns of harassment or who observe harassment should report such conduct to a supervisor, driver/fleet manager, or human resources. Reports will be promptly investigated. All employees are expected to cooperate with the investigations.

3



# BEFORE THE FORT WAYNE
# METROPOLITAN HUMAN RELATIONS COMMISSION

**B.  Telephone Interviews**

1. **Eric Henderson ("Henderson") Terminal Manager**
   The witness stated in summary the following: Henderson is no longer employed by Respondent. The Commission was given his last known contact information, and the individual who answered the phone explained that the number was not Henderson's phone number.

**C.  Onsite Interviews (November 5, 2020)**

1. **Holly Wright ("Wright") Human Resources Manager**
   The witness stated in summary the following: Wright was not part of Complainant's termination, she only investigated Complainant's internal sexual harassment complaint. Human resources is usually involved when an employee is terminated for performance or attendance issues. Wright recalls that Complainant was terminated at random.

2. **Witness One**
   The witness stated in summary the following: Witness One did not work closely with Complainant and did not have any information regarding Complainant's termination. Mid to late March, the General Motors plant shut down, so Respondent's drivers were all laid off. All of the business at the Fort Wayne location is dedicated to GM, so when they did not have work, none of Respondent's drivers had work either. When someone loses their route, they cannot just bump another driver. They have to wait for a route to open up, and then they will be awarded that route if they are the most senior person putting in for it.

3. **Witness Two**
   The witness stated in summary the following: Witness Two works as a driver for Respondent. When the General Motors plant shut down, all the employees at the Fort Wayne location were laid off. Witness Two does not know why Complainant would have been terminated instead of being laid off. Complainant may have missed a couple days, but she was a good employee.

**D.  Complainant's Discipline**

1. **Termination Document dated March 23, 2020.**
   This document was provided by the Respondent and states in summary: Complainant was terminated due to lack of work. Complainant was eligible for rehire.

**E.  Investigation Notes from Sexual Harassment Reported by Complainant (March 18, 2020)**
This document was provided by Respondent and states in summary the following: Respondent investigated allegations of sexual harassment by Complainant. On March 19, 2020, both Complainant and the alleged harasser signed a no contact agreement. This agreement states that both individuals will not have any contact at work or outside of work with the other individual.



## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

F. **Email from Holly Wright ("Wright") (March 19, 2020)**
This document was provided by Respondent and states in summary the following: Wright explained that the sexual harassment incident was the second time in two (2) weeks that an incident had to be mediated by situations instigated by Complainant. Complainant alleged that she deleted all of the snap chats from the alleged harasser and didn't speak up about any of it until after the parking lot incident with another employee. Wright explained that it seemed like Complainant was trying to cover her butt from being physical with a co-worker, by claiming the harassment.

G. **Bolt Division Loads**
This document was provided by Respondent and states in summary the following: Respondent had zero (0) load counts from March 20, 2020, through May 18, 2020.

H. **List of Employees Terminated when the Division Loads Stopped**
This document was provided by Respondent and states in summary the following: A total of eight (8) employees were terminated the same week Complainant was terminated. Six (6) employees were outside of Complainant's protected class. Two (2) of the employees, including Complainant, participated in a protected activity and were terminated.

I. **Email from Respondent to the Commission (November 5, 2020)**
This document was provided by Respondent and states in summary the following: Respondent confirmed that Complainant's termination, was the previous terminal manager's decision to terminate Complainant. The decision was made at random.

J. **Relevant Employee Files**

At the time of the onsite, the Commission requested a list of all relevant employees. From that list, the Commission chose a relevant number of files to examine to determine whether any other individuals were treated more favorably than Complainant. The Commission found that seventeen (17) similarly situated employees were not terminated when the GM plant shut down.

The determination below is based on the above summarized evidence.

## IV. ANALYSIS

Fort Wayne City Code, General Ordinance G-21-78, as amended ("Ordinance"), makes it unlawful for an employer to discriminate against an individual on the basis of any one of several classifications, including but not limited to their race, sex, color, religion or national origin. Because the Ordinance, like the Indiana Civil Rights Law ("ICRL"), parallels Title VII of the Civil Rights Act of 1964, as amended ("Title VII") in its proscription of discrimination based upon expressed grounds (*e.g.*, race, sex, color, religion or national origin), federal decisions interpreting Title VII are persuasive when reviewing a charge of discrimination under the

BEFORE THE FORT WAYNE
METROPOLITAN HUMAN RELATIONS COMMISSION

Ordinance. A violation of Title VII and the Ordinance may be established after a thorough analysis of relevant evidence.

To establish a claim of discrimination, Complainant bears the initial burden of demonstrating that the evidence supports such a claim. As set out in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, (7th Cir. 2016) the Commission's analysis will consider all of the evidence in its entirety. Complainants must utilize the familiar burden shifting analysis first set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Only if Complainant can successfully produce evidence establishing each element of a *prima facie* case does the burden shift to Respondent to articulate a legitimate, nondiscriminatory reason for its employment action. Once the legitimate, nondiscriminatory reason for the employment action has been proffered, the Complainant has the final burden to show that the reason is a pretext, a deliberate falsehood, and the real reason was discriminatory.

A.  **Retaliation**

**Prima Facie Case**

Establishment of a prima facie case of retaliation requires evidence as to the following three elements: (1) Complainant engaged in statutorily protected activity; (2) Complainant suffered an adverse employment action; and (3) A causal connection exists between the two events.

1.  **Complainant engaged in statutorily protected activity**

Under Title VII and the Ordinance, a Complainant may demonstrate that they engaged in a statutorily protected activity by showing that they opposed an employment practice that is unlawful under these laws or by showing that they participated in any manner in an investigation, proceeding or hearing under these laws. This includes explicitly or implicitly communicating to Respondent the belief that its activity constituted unlawful discrimination under Title VII and the Ordinance. A Complainant's protest may be broad or ambiguous as long as the protest would have reasonably been interpreted as opposition to such unlawful discrimination or harassment. Statutorily protected activity also includes, but is not limited to, filing a charge, testifying or assisting in an investigation, proceeding, hearing, or lawsuit under these antidiscrimination laws. A Complainant is protected against retaliation even if they are mistaken about the unlawfulness of the challenged practice. It is important to note, however, that a complaint of discrimination is not a safety net protecting employees from adverse action. An employer does not lose the ability to discipline an employee who engages in misconduct simply because the employee communicated to the employer that unlawful discrimination occurred.

In this case, investigation notes from Respondent reveal that Complainant internally investigated sexual harassment allegations that Complainant made on March 18, 2020. Complainant and the alleged harasser had to sign a no contact agreement. This agreement states that both individuals will not have any contact at work or outside of work with the other individual. Further, an email from Wright on March 19, 2020, revealed that the sexual harassment incident was the second time in two (2) weeks that an incident had to be mediated by situations instigated by Complainant. Complainant alleged that she deleted all of the snap chats from the alleged harasser and didn't speak up about any of it until after the parking lot incident with another employee. Wright

BEFORE THE FORT WAYNE
METROPOLITAN HUMAN RELATIONS COMMISSION

explained that it seemed like Complainant was trying to cover her butt from being physical with a co-worker, by claiming the harassment. This element has been met.

2. **Complainant suffered an adverse employment action**

To satisfy this element, Complainant must produce evidence to show that Respondent took a materially adverse action against them which might deter a reasonable employee from engaging in protected activity. Materially adverse actions include employment actions such as termination, denial of a promotion, non-hire, denial of job benefits, demotion, or suspension. A materially adverse action can be work-related or an even an action that takes place exclusively outside of work, as long as it may well dissuade a reasonable person from engaging in protected activity. However, a petty slight, minor annoyance, trivial punishment, or any other action that is not likely to dissuade an employee from engaging in protected activity in the circumstances is not materially adverse. The facts and circumstances of the particular case determine whether the alleged action is materially adverse.

In this case, evidence exists as to the third element. The Respondent provided a termination letter that stated the Complainant was terminated on March 20, 2020, for lack of work. Complainant was eligible for rehire.

3. **A causal connection exists between the two events**

To satisfy this element, Complainant must produce evidence to show a causal connection between the protected activity and the materially adverse action taken. The types of evidence that may support an inference that retaliation caused a materially adverse action include suspiciously close timing between the protected activity and the materially adverse action; verbal or written statements demonstrating a retaliatory motive; comparative evidence of a similarly situated employee who was treated more favorably than Complainant because they did not engage in statutorily protected activity; or any other evidence which may support an inference of retaliatory intent.

In this case, the Commission found a causal connection between the two events. Respondent's Anti-discrimination policy states that all drivers have a right to work in an environment free of discrimination, which includes freedom from harassment based on age, disability, gender, genetic information, marital status, national origin, pregnancy, race, sexual orientation, veteran status or any other legally protected status. Complainant reported sexual harassment on March 18, 2020. Complainant's termination document states her last day worked was March 23, 2020. The timing between Complainant's protected activity and the adverse action are suspiciously close.

Respondent's bolt division loads revealed that Respondent had zero (0) load counts from March 20, 2020, through May 18, 2020. Testimony from both Witness One and Witness Two revealed that when GM is shut down, none of Respondent's drivers have work. As far as the witnesses were aware all the drivers were laid off and not terminated. Respondent provided a list of employees that were terminated when the loads with GM stopped. Witness One testified that Mid to late March, the General Motors plant shut down, so Respondent's drivers were all laid off. All of the business at the Fort Wayne location is dedicated to GM, so when they did not have work, none of Respondent's drivers had work either. When someone loses their route, they cannot just

7

BEFORE THE FORT WAYNE
METROPOLITAN HUMAN RELATIONS COMMISSION

bump another driver. They must wait for a route to open up, and then they will be awarded that route if they are the most senior person putting in for it.

A total of eight (8) employees were terminated the same week Complainant was terminated. Six (6) employees were outside of Complainant's protected class. Two (2) of the employees, including Complainant, participated in a protected activity and were terminated. During File review the Commission found that seventeen (17) similarly situated employees received more favorable treatment and were not terminated when the GM plant shut down. Further, an email to the Commission from Respondent revealed that the decision to terminate Complainant instead of laying her off was made at random by the previous terminal manager. Wright also testified that the decision to terminate Complainant was at random and she does not know how she was selected. This element has been met.

### Respondent's Articulated Legitimate, Nondiscriminatory Reason(s)

As noted above, only if Complainant can successfully produce evidence establishing each element of a *prima facie* case does the burden shift to Respondent to articulate a legitimate, nondiscriminatory reason for its employment action. In this case, we have determined that Complainant has produced enough evidence to make out a prima facie case of discrimination. The Commission will examine the Respondent's legitimate, nondiscriminatory reason so clearly articulated.

Respondent stated that Complainant did report sexual harassment on March 18, 2020, however on March 20, 2020, Respondent received information from GM to immediately cease all routes. This was the route that CP drove. Complainant, along with six (6) other drivers were terminated.

### Pretext

When a Respondent articulates a legitimate nondiscriminatory reason for making an employment decision against a Complainant, evidence has to come forth from Complainant or from the investigation showing that the reason given by the Respondent is a pretext for discrimination.

The pretext element addresses the issue of whether the employer honestly believes in the reason it offers. The fairness or adequacy of the employment action is not relevant to the question of pretext. The pretext analysis is not concerned with whether the decision was right or wrong, fair or unfair, well considered or precipitous. The Commission must look only at whether the reason given actually did underlie the employment action.

In this case, the evidence gathered revealed that the given reason by Respondent shows pretext for discrimination. Out of one-hundred and twenty (120) employees, one-hundred and twelve (112) were laid off when the GM plant shut down, only eight (8) were terminated. Two (2) of the terminated employees participated in a protected activity when Complainant reported sexual harassment internally. An email from Wright on March 19, 2020, revealed that she believed Complainant only reported the sexual harassment to cover her butt from a separate incident. An email to the Commission from Respondent, and testimony from Wright revealed that the decision to terminate Complainant was at random, and they could not explain further

## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

how she was randomly selected. Further, both Witness One and Two revealed that when GM is shut down, Respondent's Fort Wayne location does not operate. The Fort Wayne location is dedicated to GM. Additionally, during file review, the Commission found that seventeen (17) other employees outside of Complainant's protected class were not terminated when GM shut down. These seventeen (17) other employees are also drivers with similar seniority as Complainant. This comparative evidence along with the suspiciously close timing of the Complainant's protected activity and adverse action show that the Respondent's proffered legitimate nondiscriminatory reason for the termination is a pretext for discrimination."

## V. CONCLUSION

Based upon these findings, **probable cause** exists to believe that Respondent unlawfully discriminated against Taesha Little in violation of Title VII of the Civil Rights Act of 1964, as amended or Fort Wayne General Ordinance G-21-78, as amended. Pursuant to Commission Rule 1-11.1 this matter is to be set for public hearing.

**SO ORDERED** on this 26th day of January 2021.

_____
Commissioner



# BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

| | |
|---|---|
| STATE OF INDIANA     )<br>                      )<br>COUNTY OF ALLEN     ) | MHRC NO:  EO-0121-A20<br><br>EEOC NO:   24D-2020-00176 |

| | |
|---|---|
| **Taesha Little**<br>1515 Sonora Drive<br>Fort Wayne, Indiana 46825<br>*Complainant,* | **Christopher C. Myers**<br>Christopher C. Myers & Associates<br>809 S. Calhoun Street, Suite 400<br>Fort Wayne, Indiana 46802 |
| v. | |
| **PAM Transport**<br>4204 W. Ferguson Road<br>Fort Wayne, Indiana 46809<br>*Respondent.* | **Matt Hoff**<br>PAM Transport, Inc.<br>297 West Henri de Tonti Boulevard<br>Tontitown, Arkansas 72770 |

## THE DETERMINATION HEARING

**COMES NOW,** the undersigned member of the **Determination Panel** and pursuant to Commission Rule, 1-4.4(c)(2)(G) makes the following determination:

1. On April 6, 2020, the Complainant filed a charge against Respondent alleging that Respondent discriminated against her in employment on the basis of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Fort Wayne General Ordinance G-21-78, as amended.

2. On January 26, 2021, the Commission concluded that substantial evidence exists to support a finding of Probable Cause with respect to the allegations based on retaliation.

3. On May 13, 2021, the Complainant requested a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").

4. According to Commission Rule 1-4.4(c)(2)(G), the Determination Panel may issue findings dismissing complaints after the Complainant has requested a Notice of Right to Sue by the EEOC.

**WHEREFORE,** pursuant to Commission Rule 1-4.4(c)(2)(G), the Commission concludes that this matter should be **DISMISSED** and the file closed.

MAY 21 2021

1

Ex. C



## BEFORE THE FORT WAYNE
## METROPOLITAN HUMAN RELATIONS COMMISSION

**SO ORDERED** on this 18th day of May 2021.

_____
Commissioner Arrington

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Taesha Little<br>1515 Sonora Dr.<br>Fort Wayne, IN 46825 | From: | Indianapolis District Office<br>101 West Ohio Street<br>Suite 1900<br>Indianapolis, IN 46204 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 24D-2020-00176 | Jeremy A. Sells,<br>State & Local Coordinator | (463) 999-1161 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Michelle Eisele*

**Michelle Eisele,
District Director**

June 24, 2021

(Date Issued)

Enclosures(s)

cc: HR Director
PAM TRANSPORT
4204 W. Ferguson Rd.
Fort Wayne, IN 46809

Christopher C. Myers
Attorney for Charging Party
809 Calhoun St., Suite 400
Fort Wayne, IN 46802

Ex. D